David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Sean N. Payne
Nevada Bar No. 13216
PAYNE LAW FIRM LLC
9550 S. Eastern Ave. Suite 253-A213
Las Vegas, NV 89123
702-952-2733
Fax: 702-462-7227
Email: seanpayne@spaynelaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Thomas Foskaris, and all similarly situated individuals,<br><br>     Plaintiffs,<br>  v.<br><br>Alteryx, Inc.,<br><br>     Defendant. | Civil Action No.:<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ. AND FOR DAMAGES AND EQUITABLE RELIEF UNDER NEVADA STATE LAW**<br><br>**JURY TRIAL DEMANDED** |

1

## JURISDICTION AND VENUE

1.    This Court has federal question jurisdiction because this case arises out of violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").  28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*, 773 F. Supp. 2d 941, 946 (D. Nev. 2011).

2.    This Court has supplemental jurisdiction to hear all state law claims under Nevada state law pursuant to 28 U.S.C. § 1367.

3.    This Court also has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million exclusive of interest and costs, there are more than 100 putative class members, and at least some members of the proposed Class have different citizenship than Alteryx.

4.    Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of the County of Clark, State of Nevada and because Defendant is subject to personal jurisdiction in the County of Clark, State of Nevada as it conducts business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

## PARTIES

5.    Plaintiff Thomas Foskaris ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada.

6.    Plaintiff and all putative Class members are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).  Additionally, Plaintiff and members of the Nevada Subclass are "persons" as used in NRS 598 and NRS 41.600.

7.      Defendant Alteryx, Inc. ("Alteryx") is a Delaware corporation with its principal place of business in Irvine, California.  Alteryx does business in the State of Nevada, as it derives information from Nevada consumers which it uses to create its data analytics products.

8.      Defendant Alteryx regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties in the form of data analytics products, and uses interstate commerce to prepare and/or furnish the reports.  Alteryx is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). Additionally, Alteryx is a "person" as used in NRS 598 and NRS 41.600.

9.      Unless otherwise indicated, the use of Alteryx's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Alteryx.

## FACTUAL ALLEGATIONS

### *Alteryx Exposes the PII of 123 Million U.S. Households to Prospective Identity Thieves*

10.     Alteryx describes itself as "The Leader in Self-Service Data Analytics."[1]  Part of Alteryx's business includes maintaining a software platform, which "enables organizations to dramatically improve business outcomes and the productivity of their business analysts."[2]

11.     One of Alteryx's business partners is Experian Marketing Services ("Experian Marketing").  Alteryx claims that it assists Experian to "improve the quality and value of its commercial services," which include to "drive down costs and raise the efficiency of

---

[1] Alteryx, About us, available at https://www.alteryx.com/about-us (last visited Dec. 19, 2017).
[2] Alteryx, Inc. Feb. 24, 2017 Form S-1 Registration Statement, at 2, United States Securities and Exchange Comm'n, available at https://www.sec.gov/Archives/edgar/data/1689923/000119312517056475/d282071ds1.htm (last visited Dec. 19, 2017).

our data delivery infrastructure."[3]

12.     On information and belief, Alteryx obtains or obtained at least some of the data used to

perform and provide its data analytics services from Experian Information Solutions, Inc.

("Experian"), particularly information contained in Experian's "ConsumerView"

marketing database. Experian describes ConsumerView as "the world's largest consumer

database," which contains "thousands of attributes on more than 300 million consumers

and 126 million households."[4] The data available through ConsumerView includes, but

is not limited to consumer (1) age, (2) gender, (3) marital status, (4) presence of children,

(5) family status and position, (6) location, (7) homeowner status, (8) education, and (9)

occupation.[5] This information constituted personally identifiable information ("PII").

13.     Alteryx actively markets and sells data analytics products to third parties which use the

Experian PII. Specifically, Alteryx claims that by "combining the data blending and

advanced analytics of Alteryx with the demographic and behavioral data from Experian,

you can append unprecedented insight about your customers and prospects, as well as

monitor the changing dynamics of households over time."[6] In particular, Alteryx markets

the "Experian ConsumerView household file," which contains "consumer demographics,

life event, direct response, property, and mortgage information for more than 235 million

consumers and 113 million households."[7] According to Alteryx this data can be analyzed

at the individual level, permitting consumers to "analyze potential consumers based on

---

[3] Alteryx, *Alteryx Helps Experian Marketing Services Reduce Delivery Time for Client-Ready Output by 70 Percent*, available at: https://www.alteryx.com/sites/default/files/resources/files/case-study-experian.pdf (last visited Dec. 19, 2017).
[4] *See* Experian, ConsumerView, available at
https://www.experian.com/assets/dataselect/brochures/consumerview.pdf (last visited Dec. 19, 2017).
[5] *See id.*
[6] Alteryx, *Experian Marketing Services*, available at: https://www.alteryx.com/partners/experian-marketing-services (last visited Dec. 19, 2017).
[7] *Id.*

marital status, gender, education, and occupation group."[8]    Alteryx promises that, "Armed with current and five-year projections on lifestyle, attitude, brand preference, media use, and more, you can accurately predict customer demand today, tomorrow, and in the long term."[9]

14.    On October 6, 2017, an employee of UpGuard, a cyber-security firm, discovered an Amazon Web Services S3cloud storage bucket located in the subdomain "alteryxdownload" whose permission settings allowed for over a million specified users to access the contents of the bucket.    User registration which would permit access was free, and could be accomplished by a single dummy sign-up which used a new email address.[10]    On information and belief, the information found in this storage bucket had been placed there by Alteryx.

15.    Among the files in the bucket was one entitled, "ConsumerView_10_2013.yxdb."    On information and belief, this was an Experian ConsumerView product from October of 2013, and the file extension was an Alteryx database file format used for large data set analytics.    The file contained 123 million rows, each signifying a different American household.[11]    In each row, 248 columns cross-indexed contained highly detailed information regarding the household addresses, phone numbers, number of adults and children living in the dwelling unit, length of residence, along with highly granulated consumer-purchasing data – in sum, sufficient PII for an identity thief to recreate not only a person's identity, but also their lifestyle.[12]    This information, which was comprised of

---

[8] *Id.*
[9] *Id.*
[10] Dan O'Sullivan, *Home Economics: How Life in 123 Million American Households Was Exposed Online*, UpGaurd, https://www.upguard.com/breaches/cloud-leak-aleryx (last visited Dec. 19, 2017).
[11] *Id.*
[12] *Id.*

"the essential details of a core of American households," could be cross-referenced with a voter registration database, for example, to procure essential details about individual consumers.[13]

16.    On December 19, 2017, UpGuard published its findings regarding investigation of the publicly available data in the storage bucket, which were quickly reported by news organizations later that day.[14]

17.    For the Plaintiff, as with all potential Class members, these news stories were the first time that they had been informed by Alteryx that their information secured by Alteryx had been compromised.

18.    Plaintiff, individually and on behalf of those similarly situated, brings this action to challenge the actions of Alteryx in the protection and safekeeping of the Plaintiff's and Class members' personal information.  Alteryx's failures to safeguard consumer PII has caused Plaintiff and Class members damages.

*Alteryx's Conduct Violated the FCRA.*

19.    The United States Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), to insure fair and accurate credit reporting, promote efficiency in the banking system, and, as most relevant to this Complaint, protect consumer privacy.  The FCRA imposes duties on the CRAs to protect consumer's sensitive personal information.

20.    The FCRA protects consumers through a tightly wound set of procedural protections

---

[13] Thomas Fox-Brewster, *120 Million American Households Exposed in "Massive ConsumerView Database Leak*, Forbes, available at: https://www.forbes.com/sites/thomasbrewster/2017/12/19/120m-american-households-exposed-in-massive-consumerview-database-leak/#384c64f17961 (last visited Dec. 19, 2017).

[14] *See id.*; *see also* Ryan Grenoble, *Alteryx Data Breach Exposes Information On 123 Million American Households*, Huffington Post, Dec. 19, 2017, available at https://www.huffingtonpost.com/entry/alteryx-data-breach-123-million-households_us_5a39316ae4b0860bf4ab4e24 (last visited Dec. 19, 2017).

from the material risk of harms that otherwise follow from the compromise of a consumer's sensitive personal information.    Through these protections, Congress recognized a consumer's substantive right to protection from damage to reputation, shame, mortification, and emotional distress that naturally follows from the compromise of a person's identity.

21.    Central to the FCRA's privacy protections are restrictions on consumer reporting agencies, or CRAs.    A CRA is a person or entity "which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

22.    Alteryx is a "consumer reporting agency" ("CRA") within the cognizance of 15 U.S.C. § 1681a(f) because it acquires and assembles a consumer's PII in commercial transactions, i.e., for use in its data analytics products, after Alteryx first acquires the consumer PII data from Experian.

23.    A central duty that the FCRA imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties.    15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a consumer's information only for one of a handful of exclusively defined "permissible purposes."    To ensure compliance, CRAs must maintain reasonable procedures to ensure that such third party disclosures are made exclusively for permissible purposes.    15 U.S.C. § 1681e(a).

24.    The FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness,

credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."  15 U.S.C. § 1681a(d).  Under this broad definition, a consumer's PII qualifies as a "consumer report."

25.    Alteryx failed to properly safeguard the information of Plaintiff and Class members, as required under 15 U.S.C. § 1681e(a).  Alteryx failed to take the necessary precautions required to safeguard and protect Plaintiff and Class members' PII from unauthorized disclosure, as their PII was improperly handled and stored.  Therefore, on information and belief, the PII of Plaintiff and Class members was exposed to an unnecessarily high risk of access from identity thieves and others with no right to access the data.

*Alteryx's Conduct Also Violated NRS 598 and NRS 41.600.*

26.    NRS 598.0923(3) provides that a violation of any federal or Nevada law constitutes consumer fraud.  Defendant's violations of 15 U.S.C. § 1681e(a), as outlined above, also "relat[ed] to the sale . . . of goods or services," i.e., the data-driven transactions Alteryx entered into with third parties which included Plaintiff and Class members' PII.  Alteryx's actions thus violated NRS 598.0923(3).

27.    Additionally, Alteryx's violations of NRS and 598.0923(3) in turn constituted "consumer fraud" for purposes of NRS 41.600(2)(e).

*Harms Suffered by Plaintiff and Class Members as a Result of the Data Breach.*

28.    By failing to establish reasonable procedures to safeguard individual consumer's private

information, Alteryx deprived consumers nationwide from a benefit conferred on them by Congress under 15 U.S.C. § 1681e(b), which, now lost, cannot be reclaimed. Similarly, Alteryx deprived Nevada consumers of a benefit conferred on them by the Nevada legislature in NRS 598 and NRS 41.600, which has been irreparably lost.

29. The harm to Plaintiff and Class members was complete at the time the unauthorized breaches occurred, as the unauthorized disclosure and dissemination of private credit information causes harm in and of itself.

30. Moreover, there is a high likelihood that significant identity theft and fraud has not yet been discovered or reported, and that Plaintiff and Class members' PII will be offered for sale or actually sold in "dark web" marketplaces. This will result in ongoing harm to Plaintiff and members of the Class as data thieves invariably seek to utilize the PII, or seek to re-sell it. Thus, Alteryx's wrongful disclosure of Plaintiff and Class members' PII placed them in an imminent, immediate, and continuing risk of harm for identity theft and identity fraud.

31. Plaintiff and Class members have additionally been harmed as they have (1) been forced to take steps to protect against unauthorized disclosures of their PII, and (2) incurred, intend to incur, and/or considered incurring the cost of obtaining identity protection products.

32. Plaintiff and Class members have been obligated to retain an attorney to prosecute this case, and are entitled to an award of reasonable attorney's fees and costs.

//

//

//

//

## CLASS ALLEGATIONS

33.    Plaintiff brings this action pursuant to 15 U.S.C. § 1681e(a), on behalf of a nationwide

class of all similarly situated individuals ("Class"), defined as:

All persons in the United States for whom Alteryx stored private, personal
information that was released as a result of the Alteryx data breach disclosed in
December 2017.

Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries,
parents, successors, predecessors, and any entity in which Defendant or its parents
have a controlling interest, and those entities' current and former employees,
officers, and directors; (2) the Judge to whom this case is assigned and the
Judge's immediate family; (3) any person who executes and files a timely request
for exclusion from the Class; (4) any persons who have had their claims in this
matter finally adjudicated and/or otherwise released; and (5) the legal
representatives, successors and assigns of any such excluded person.

34.    Plaintiff also brings this action pursuant to NRS 41.600 and NRS 598.0923(3) on behalf

of a subclass of all similarly situated individuals in Nevada ("Subclass"), defined as:

All persons in Nevada for whom Alteryx stored private personal information that
was released as a result of the Alteryx data breach disclosed in December 2017.

Excluded from the Subclass are: (1) Defendant, Defendant's agents, subsidiaries,
parents, successors, predecessors, and any entity in which Defendant or its parents
have a controlling interest, and those entities' current and former employees,
officers, and directors; (2) the Judge to whom this case is assigned and the
Judge's immediate family; (3) any person who executes and files a timely request
for exclusion from the Class; (4) any persons who have had their claims in this
matter finally adjudicated and/or otherwise released; and (5) the legal
representatives, successors and assigns of any such excluded person.

35.    At this time, Plaintiff does not know the size of the Class because the information is

exclusively in the possession of the Defendant, but Plaintiff believes that the potential

number of Class members is so numerous that joinder would be impracticable.  It has

been reported that the Class could consist of over 123 million households.  The number

of Class members can be determined through discovery, particularly investigation of

Alteryx's internal records.

36. All members of the Class have been subject to and affected by a uniform course of conduct in that all Class members' personal information was compromised during the data breach. These are questions of law and fact common to the proposed Class that predominate over any individual questions. The questions common to all Class and/or Subclass members include, but are not limited to:

    a. Whether Alteryx had implemented reasonable procedures to ensure that all third parties who accessed Plaintiff's and Class members' private credit information did so for a permissible purpose;

    b. Whether Alteryx engaged in consumer fraud in violation of NRS 598.0923(3) with respect to Plaintiff and Subclass members;

    b. Whether Plaintiff and Class members suffered damages as a result of Alteryx's failure to comply with FCRA and NRS 41.600 based on the improper dissemination of their credit information as a result of the data breach;

    c. Whether Plaintiff and Class members are entitled to statutory damages; and

    d. Whether Plaintiff and Class members are entitled to punitive damages.

37. Plaintiff's claims are typical of the class, as Plaintiff's PII was compromised during the data breach. All claims are based on the same legal and factual issues.

38. Plaintiff will adequately represent the interests of the class and does not have an adverse interest to the class. If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the superior method for the quick and efficient adjudication of this controversy. Plaintiff's counsel has experience litigating consumer class actions.

39.  Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final declaratory and injunctive relief with respect to the proposed Subclass as a whole.

## COUNT ONE: VIOLATION OF 15 U.S.C. § 1681, *et al.*
### Plaintiff and the Class

40.  This Count is brought on behalf of the nationwide Class.

41.  Based upon Alteryx's failure to have reasonable procedures in place as required by 15 U.S.C. § 1681e(a), Plaintiff's PII was compromised.

42.  As a result of each and every willful violation of FCRA, Plaintiff and Class members are entitled to: actual damages, pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may allow, pursuant to 15 U.S.C. 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

43.  As a result of each and every negligent non-compliance of the FCRA, Plaintiff and Class members are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

## COUNT TWO: VIOLATION OF NRS 41.600
### Plaintiff and the Nevada Subclass

44.  This Count is brought on behalf of the Nevada Subclass.

45.  Alteryx engaged in unfair and unlawful acts and practices by failing to maintain adequate procedures to avoid a data breach, and permitting access to consumer reports by data thieves, for whom Alteryx had no reasonable grounds to believe would be used for a proper purpose.  Plaintiff and Subclass members relied on Alteryx's implied promise of data security when providing their PII to Alteryx to purchase Alteryx's goods.

46.  Alteryx's conduct violated NRS 598.0917(7) because it constituted a tender of "goods

advertised for sale . . . or tendering terms of sale or lease less favorable than the terms advertised," i.e., goods offered for sale by credit card without the corresponding promise that a consumer's PII would be kept reasonably safe from harm. Alteryx's violations of NRS 598.0917(7) constituted "consumer fraud" for purposes of NRS 41.600(2)(e).

47. Additionally, Alteryx's violation of 15 U.S.C. § 1681e(a) also "relat[ed] to the sale . . . of goods or services," and thus violated NRS 598.0923(3). Alteryx's violations of NRS 598.0923(3) constituted "consumer fraud" for purposes of NRS 41.600(2)(e).

48. Defendants engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to Plaintiff and Subclass members.

49. As a direct and proximate result of the foregoing, Plaintiff and Subclass members have suffered injuries including, but not limited to actual damages, and in being denied a benefit conferred on them by the Nevada legislature.

50. As a result of these violations, Plaintiff and Subclass members are entitled to an award of actual damages, equitable injunctive and declaratory relief, as well as an award of reasonable attorney's fees.

## COUNT THREE: Negligence
## Plaintiff and the Nevada Subclass

51. This Count is brought on behalf of the Nevada Subclass.

52. Alteryx negligently breached its duty of care to Plaintiff and Class members by failing to uncover and remedy the known risks which led to the data breach, thereby leading to the dissemination of Plaintiff and Subclass members' PII.

53. Additionally, Alteryx failed to inform Plaintiff and Subclass members of this heightened risk of harm.

54.    Plaintiff and Subclass members suffered damages as a result of Alteryx's breach of its duty of care, and are entitled to an award of actual and punitive damages, as well as an award of reasonable attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief against Alteryx:

A.    For an award of actual damages against Alteryx for all allegations contained in Count One, Count Two, and Count Three;

B.    For an award of statutory damages pursuant to 15 U.S.C. §1681n(a)(1) against Alteryx for the allegations contained in Count One for each eligible Class member and the Plaintiff;

C.    For an award of punitive damages against Alteryx as the Court may allow for the allegations contained in Count One pursuant to 15 U.S.C. 1681n(a)(2), and Count Three under Nevada common law;

D.    For an award of the costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and 15 U.S.C. §1681o(a)(2) against Defendant for each incident of noncompliance of FCRA alleged in Count One, under NRS 41.600(c) as alleged in Count Two, and under Nevada common law as alleged in Count Three;

E.    For appropriate equitable declaratory and injunctive relief for the allegations contained in Count Two pursuant to NRS 41.600; and

F.    For all other relief this Court may deem just and proper.

//

//

//

//

//

//

//

14

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: December 20, 2017

Respectfully Submitted,

/s/ Miles N. Clark
Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129

David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123

Sean N. Payne
PAYNE LAW FIRM LLC
9550 S. Eastern Ave. Suite 253-A213
Las Vegas, NV 89123

*Counsel for the Plaintiff and the Class*